## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

MARYSUSAN CATHOLDI-JANKOWSKI,
individually and on behalf of all others
similarly situated,

        Plaintiff,

    v.

CVS HEALTH CORPORATION, a Rhode
Island Corporation; and CVS PHARMACY,
INC., a Rhode Island Corporation,

        Defendants.

Civil Case No.: 6:22-cv-6227

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Marysusan Catholdi-Jankowski ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action based upon personal knowledge as to herself and her own acts, and as to all other matters, based upon, *inter alia*, the investigation of her attorneys.

### NATURE OF THE ACTION

1.      Defendants CVS Health Corporation and CVS Pharmacy Inc. ("Defendants") are Rhode Island corporations headquartered in Woonsocket, Rhode Island. Defendants operate retail stores where they sell a variety of products, including healthcare-related items.

2.      Defendants sell at their stores and elsewhere certain items from their own brand, such as CVS-brand alcohol-based hand sanitizer. Defendants include, printed on the bottles which contain their hand-sanitizer, a statement that the product kills 99.99% of germs.  CVS' Advanced Formula Hand Sanitizer with Aloe Vera and all similar CVS-brand hand sanitizers state on their bottles, "kills 99.99% of germs."

3.      These statements, in that they are made with a degree of certainty to the hundredth digit, necessarily imply that a scientific study proves that the product in fact kills 99.99% of germs.

4.    However, it is scientifically proven that alcohol-based hand-sanitizer does not kill many types of germs.  It does not kill many non-enveloped viruses, such as norovirus. "Norovirus is the leading cause of foodborne illness in the United States.  It causes 58% of foodborne illnesses acquired in the United States." https://www.cdc.gov/norovirus/trendsoutbreaks/burden-US.html. It is hard to believe that Defendants' hand-sanitizer kills 99.99% of all germs, while excluding the family of viruses that causes more than half of all food borne illnesses in the country. It also does not kill bacterial spores, protozoan cysts, some parasites like Giardia, and the diarrhea-causing bacterium Clostridium difficile. Moreover, studies have shown that some bacteria are becoming alcohol-resistant.  For these reasons, no scientific study can prove with any degree of certainty the overall percentage of germs which alcohol-based hand-sanitizer kills.  Accordingly, the claim that the hand-sanitizers kill 99.99% of germs is a false statement.

5.    Defendants were aware that it is scientifically proven that alcohol-based hand-sanitizers do not kill many types of germs and that no evidence supports their claim that the hand-sanitizer kills 99.99% claims, yet they continue to make this efficacy claim to the hundredth digit.  Defendants do not claim that their hand sanitizers kill 99.99% of "some" or a certain number of germs, but rather, by not placing a modifier between the number "99.99%" and the phrase "of germs," Defendants create the clear impression that it has been scientifically proven that their hand sanitizers kill 99.99% of *all* germs.

6.    The front label of each bottle of Defendant's hand sanitizer contains an asterisk, which leads to the statement on the back label, in miniscule font, that reads: "In as little as 15 seconds, kills more than 99.99% of many common germs that may cause illness."  This language plainly does not take back the promise on the front label, but merely provides an ancillary promise that the product will kill 99.99% of a subset of germs that may cause illness within a specific time period.

7.    The product labels are therefore materially misleading, in that they plainly state, in a manner giving the impression that it has been scientifically proven, that the product kills

99.99% of germs, when studies show that it does not kill many types of germs. Hundreds of thousands of consumers have purchased these products, particularly during the ongoing COVID-19 pandemic, in the false but reasonable belief the hand sanitizers have been proven to kill 99.99% of germs and will protect people from disease. It has not been so proven. Reasonable consumers have been misled.

8.      There is estimated to be somewhere between 100 billion and 1 trillion different microbial species on earth. The current catalogued species of microbes accounts for approximately 0.001% of germs in existence. In other words, 99.999% of germs are yet to be discovered and identified. Defendants have not tested the efficacy of their hand sanitizer against every one of the approximately 0.001% of catalogued species of germs in existence. Moreover, no amount of testing during the present time can substantiate the claim that ethanol-based hand sanitizers kill "99.99% of germs." Defendants know this, experts in the field of microbiology know this, but the reasonable consumer does not know this because they have only read that the product "kills 99.99% of germs."

9.      As a result of Defendants' deceptive and misleading practices, Plaintiff and the Class members were induced to purchase hand-sanitizer which does not perform as advertised. Defendants have made millions of dollars in fraudulent sales to individuals who Defendants told were receiving a product which had been proven, with a nearly 100 percent degree of certitude, to kill almost every germ. Defendants' customers did not receive the benefit of their bargain. Defendants' customers paid a price premium by purchasing a product that kills 99.99% of *some* of the approximately 0.001% of catalogued species of germs in existence, instead of 99.99% of germs broadly. The hand-sanitizer does not kill the vast majority of the germs in existence. Instead, ethanol-based hand-sanitizer kills 99.99% of, at best, a few dozen germs that have not yet grown resistant to ethanol, when applied to the skin and left untouched for a set period of time.

**THE PARTIES**

10.     Plaintiff Marysusan Catholdi-Jankowski is a New York citizen residing in Webster, New York.  Plaintiff purchased a bottle of CVS' Advanced Formula Hand Sanitizer with Aloe Vera, an alcohol-based hand-sanitizer, from a CVS store located at 2200 Penfield Rd, Penfield, NY 14526.

11.     Defendants are Rhode Island corporations with their principal places of business located in Woonsocket, Rhode Island.  Defendants do substantial business, including sales of their health products, in New York state, and in the Western District of New York specifically.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA) because the amount in controversy in this matter exceeds $5 million as to all putative Class members, inclusive of attorneys' fees and costs, and injunctive relief.  *See* 28 U.S.C. § 1332(d).

13.     This Court has personal jurisdiction over Defendants because the claims alleged by Plaintiff and the Class members arise out of the business activities conducted by the Defendants in the State of New York.

14.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a), because all claims alleged herein form part of the same case or controversy.

15.     Venue is appropriate in the Western District because, among other things: (a) Plaintiff resides in the Western District, (b) Plaintiff purchased the products from a CVS store in the Western District; and (c) many of the acts and omissions that give rise to the claims for relief alleged in this action took place in the Western District.

//

//

//

//

//

**FACTUAL ALLEGATIONS**

16.     Plaintiff is an individual who purchased the CVS brand alcohol-based hand-sanitizer from one of Defendants' stores.  When Plaintiff purchased the hand-sanitizer, the label on the bottle stated prominently that the product would "kills 99.99% of germs."  Images of the front label of the bottle that Plaintiff purchased are included below.

 

17.     The above statement on the front label of the hand-sanitizer contained an asterisk, which lead to a statement on the back label, in miniscule font.  The statement read "In as little as 15 seconds, kills more than 99.99% of many common germs that may cause illness."  This statement plainly does not disclaim the promise made on the front label, but rather provides an ancillary promise that the product will kill 99.99% of a subset of germs that may cause illness within a specific time period.  Accordingly, a reasonable consumer acting reasonably under the

circumstances would not understand this statement to modify or take back the promise made on the front of the bottle, which was that it would kill 99.99% of all germs.  An image of the back label of Defendants' product is included below.



18.     Regardless, Plaintiff did not read the statement included on the back label. Plaintiff did read the promise on the front label that the product "kills 99.99% of germs" and reasonably relied upon it when purchasing the hand sanitizer.  Plaintiff, a reasonable consumer acting reasonably under the circumstances, believed that this statement meant that it was scientifically proven that the hand-sanitizer would kill 99.99% of all known germs.  That is because the statement included an exact figure for the percentage of germs that would be killed to the hundredth decimal point, did not include any qualifying language between the number "99.99%" and the phrase "of germs," and did not otherwise explain any limitations of the

product's ability to kill germs.  A number as exact and specific as "99.99" leads a reasonable person to conclude that the number has been calculated, not that it has been picked out of thin air.  The lack of any limiting language on the product coupled with the promise that the product will kill 99.99% of germs would lead a reasonable consumer acting reasonably under the circumstances to believe that there are no limitations to the efficacy of the product in killing 99.99% of all germs.

19.    The statement created a false impression.  No scientific study indicates that alcohol-based hand-sanitizers kill 99.99% of germs.  In fact, many scientific studies show that hand-sanitizers do not kill many prominent and harmful germs, and that they are less effective than washing one's hands.

20.    First, studies show that some types of bacteria are becoming alcohol-resistant due to the use of hand-sanitizers.  For instance, the bacterium Enterococcus faecium has been found to have become ten times more alcohol tolerant in the years after 2010 than it was in the years before    2010.    (https://www.forbes.com/sites/brucelee/2018/08/04/how-this-bacteria-may-becoming-more-resistant-to-hand-sanitizer/?sh=88ab4b622ddd.)

21.    Second, it is known that alcohol-based hand sanitizers do not kill many non-enveloped viruses, such as norovirus, and may in fact actually cause outbreaks of norovirus. (*See* https://www.medicalnewstoday.com/articles/232708#1.)    As noted above, norovirus accounts for over half of the food-borne illnesses in the country.

22.    Third, it is known that alcohol-based hand-sanitizers do not kill bacterial spores, which    are    a    leading    cause    of    illness. (https://www.researchgate.net/publication/43353621_Effectiveness_of_Alcohol-Based_Hand_Rubs_for_Removal_of_Clostridium_difficile_Spores_from_Hands.)

23.    Fourth, it has been shown that alcohol-based hand-sanitizers do not kill protozoan cysts,    which    grow    to    become    invasive    parasites,    such    as    Giardia. (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4510183/.)

24.     In light of the fact that evidence shows that many types of germs are not killed by alcohol-based hand-sanitizers, and that the use of alcohol-based hand-sanitizer may actually be counter-productive to the goal of killing germs, it appears extremely doubtful that these sanitizers in fact kill 99.99% of all germs.  Certainly, no study shows that the sanitizers kill any given amount of germs such that an exact percentage of germs killed could be stated.  Yet, that is exactly what Defendants have done.  Defendants made false statements.

25.     Plaintiff purchased the hand-sanitizer in reliance on the representation, believing that it had in fact been scientifically proven that the hand-sanitizer killed 99.99% of all germs. Plaintiff received a product that was not in fact proven to kill 99.99% of germs.  Plaintiff did not get the product that was advertised.  Plaintiff was deprived of the benefit of her bargain.

26.     Defendants' false and misleading labeling is effective, as Plaintiff and other class members were reasonably misled and purchased Defendants' hand sanitizer at a price premium. Defendants charges a price premium for its' hand sanitizers because they knows that consumers will pay more for a product which promises them protection from virtually all germs.

27.     Plaintiff recalls purchasing a 32 oz bottle of Defendant's CVS' Advanced Formula Hand Sanitizer with Aloe Vera for approximately $8.00, or at price of approximately $0.25 per oz.

28.     In comparison, an 8 oz bottle of Xtra Care Antibacterial Hand Sanitizer with Vitamin E & Aloe retails at Dollar Tree for $5.00 per 24 bottles (192 oz), or approximately $0.026 per oz.[1]  The Xtra Care hand sanitizer does not have a claim on its front label promising to kill 99.99% of germs.

---

[1] https://www.dollartree.com/xtra-care-antibacterial-hand-sanitizer-with-vitamin-e-aloe-8oz-bottles/325997

29.     Likewise, an 18 oz bottle of McKesson Premium Hand Sanitizer With Aloe retails at HonestMed for $3.94, or approximately $0.218 per oz.[2]  The McKensson hand sanitizer also does not have a claim on its front label promising to kill 99.99% of germs.

30.     In addition, a 16 oz bottle of SupplyAid 80% Alcohol Hand Sanitizer Gel w/ Soothing Aloe retails at Snow Joe for $3.99, or approximately $0.24 per oz.[3]  The SupplyAid actually contains more alcohol that CVS' hand sanitizer, and does not have a claim on its front label promising to kill 99.99% of germs.

31.     Prior to purchasing Defendant's hand sanitizer, Plaintiff was aware of these products, and considered purchasing them, but did not do so.  Instead, Plaintiff, as reasonable consumer acting reasonably under the circumstances, relied upon the "kills 99.99% of germs" promise on the front label of Defendant's hand sanitizer and was misled into purchasing Defendant's hand sanitizer at a price premium under the false belief that Defendant's hand sanitizer was more effective at killing germs.

32.     Defendant's representation that their hand sanitizers "kill[] 99.99% of germs" commands a price premium because consumers are reasonably misled to believe that Defendant's hand sanitizers are more effective at killing germs than hand sanitizer products which lack a similar statement.  Had Defendant informed its consumers that its hand sanitizers did not actually kill 99.99% of germs, Plaintiff and other reasonable consumers would not pay a price premium for Defendant's hand sanitizers, but rather would opt to purchase cheaper hand sanitizers which do not make that promise.

33.      Plaintiff continues to desire to purchase hand sanitizer which will actually kill 99.99% of germs.  As such, Plaintiff would purchase Defendant's hand sanitizer again if Defendant reformulates its hand sanitizers to actually kill 99.99% of germs.  However, as Defendant's labeling is currently false and misleading, Plaintiff cannot rely upon it to determine

---

[2] https://honestmed.com/shop/Housekeeping-&-Cleaning-Supplies/Hand-Hygiene/Gel-Hand-Sanitizers-/100813?gclid=EAIaIQobChMI-IaPifjG9wIVshrnCh3eAwAwEAQYEiABEgIF_PD_BwE

[3] https://snowjoe.com/products/80-plant-based-alcohol-hand-sanitizer-gel-w-soothing-aloe-1

if or when Defendant's hand sanitizers are reformulated to actually kill 99.99% of germs. Accordingly, Plaintiff requires an injunction against Defendant's false and misleading advertising practices, until such a time that Defendant's "kills 99.99% of germs" representation is true and accurate.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on her own behalf and on behalf of the Class members pursuant to the New York Civil Practice Law & Rules § 1002(a).  Plaintiff intends to seek certification of a class defined as follows:

> All persons residing in the State of New York who purchased CVS brand hand-sanitizer during the period beginning four years before the date of the filing of this Complaint to entry of final judgment (the "Class").

35.     Excluded from the Class are: (a) Defendants, including any entity in which any of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families.  Plaintiff reserves the right to amend the definition of the Class if discovery, further investigation, and/or rulings by the Court dictate that it should be modified.

36.     *Numerosity*. The members of the Class are so numerous that the joinder of all Class members is impractical.  While the exact number of Class members is unknown to Plaintiff at this time, given the amount of Defendants' brand hand-sanitizer sold in New York, it stands to reason that the number of Class members is at least in the thousands.  Class members are readily identifiable from information and records in Defendants' possession, custody, or control, such as account information and sales records.

37.     *Commonality and Predominance*.  There are questions of law and fact common to Class members, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.      Whether Defendants' CVS-brand hand-sanitizers contain the statement, on the product labels, that the product kills 99.99% of germs;

b.      Whether Defendants' product labeling created the impression among their customers that their product would kill 99.99% of all germs;

c.      Whether a reasonable person would have read the statement "kills 99.99% of germs" and any accompanying language to mean that the hand-sanitizer had been scientifically proven to kill at least that exact percentage of germs;

d.      Whether the hand-sanitizer kills 99.99% of germs;

e.      Whether it has been scientifically proven that the hand-sanitizer kills 99.99% of germs;

f.      Whether Defendants knew or should have known that it had not been scientifically proven that the hand-sanitizer kills 99.99% of germs;

g.      Whether Defendants knew or should have known that the hand-sanitizer does not kill 99.99% of germs;

h.      The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled; and

i.      Whether Plaintiff and Class members are entitled to damages, civil penalties, and/or injunctive relief.

38.     *Typicality*. Plaintiff's claims are typical of those of other Class members because Plaintiff, like the other Class members, purchased CVS brand hand-sanitizer which included a statement that it would kill 99.99% of germs, but would not in fact kill that percentage of germs.

39.     *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Class members.  Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer class actions, and Plaintiff intends to prosecute this action vigorously.  Plaintiff and Class members have a unified and nonconflicting interest in pursuing the same claims and obtaining the same relief.  Therefore, all Class members will be fairly and adequately represented by Plaintiff and her counsel.

40.     *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this

controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

41.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

*(New York General Business Law § 349 – Deceptive Acts and Practices)*

42.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 41, inclusive, of this Complaint as if set forth fully herein.

43.     Defendants' misconduct is consumer oriented.

44.     Specifically, Defendants represented to consumers, including Plaintiff and the Class members, that CVS-brand hand-sanitizers would kill 99.99% of germs. Defendants did so by representing on its product label that its product  "kills 99.99% of germs."

45.     This statement, inclusive of any disclaimer, would lead a reasonable consumer acting reasonably under the circumstances to conclude that the hand-sanitizer had been proven through a scientific study to kill 99.99% of germs. That is because the statement included an exact figure for the percentage which went to the hundredth decimal point.  Such an exact number would lead a reasonable person to conclude that a specific number had been calculated, and not that it had been picked out of clean air.

46.     The representation that the hand sanitizer "kills 99.99% of germs," inclusive of any disclaimer, is a deceptive act or practice.  It has not been proven in any scientific study that the hand-sanitizer kills 99.99% of germs.  In fact, it is scientifically proven that alcohol-based

hand-sanitizer does not kill many types of germs.

47.    Defendants knew that the representation at issue was deceptive when they made it, and/or made the representation recklessly and without regard for its truth. Defendants understood, or should have understood, that no scientific study proved that any specific percentage of all germs would be killed by the hand-sanitizer. Defendants understood the limitations of any studies they conducted, or caused to be conducted, purporting to substantiate the claim that the product kills 99.99% of germs.  Defendants understood that their product was not and could not be tested against every microbial species on Earth, or every catalogued microbial species on Earth.

48.    Defendants also understood, or should have understood, that alcohol-based hand-sanitizer does not kill many types of germs.  Defendants understood that reasonable consumers do not have a sophisticated understanding of microbiology and will not know to, or be able to, test the veracity of Defendants' claim that their product kills 99.99% of germs.  Defendants are the only party in possession of any scientific studies purporting to support the claim on their hand sanitizer label.  Defendants did not publicize their studies purporting to support the claim that the hand sanitizer kills 99.99% of germs.  Defendants did not list any limitations of their study on their hand sanitizer labels.  Defendants did not place a qualifier between the number "99.99%" and the phrase "of germs," even though they very easily could have placed the word "some" or the number of germs for which the product has been tested between the number "99.99%" and the phrase "of germs."

49.    Defendants did include an asterisk on the front label of their hand sanitizer label, which lead to a statement on the back label, in miniscule font, which read: "In as little as 15 seconds, kills more than 99.99% of many common germs that may cause illness."  However, this statement plainly does not disclaim the promise made on the front label, but rather provides an ancillary promise that the product will kill 99.99% of a subset of germs that may cause illness within a specified time period.   A reasonable consumer acting reasonably under the circumstances would not understand this statement to modify or take back the promise made on

the front of the bottle, which was that the hand sanitizer would kill 99.99% of all germs.

50.     Defendants intended that Plaintiff and the Class members rely on the representation.  The advertisement was placed on the product for the sole purpose of inducing customers to purchase the product.  Defendants understood that by promising to kill nearly every germ, their hand sanitizer would be purchased by consumers who trust Defendants and any promises of efficacy contained on Defendants' products, resulting in greater profits to Defendants than Defendants would otherwise generate from sales of hand sanitizer.  Defendants understood, or should have understood, that a reasonable person would read the "99.99%" promise to indicate that it was a scientific fact that this hand-sanitizer killed that number of germs.  Because this statement was placed on the front label nearly all CVS-brand hand sanitizers, it affects all similarly situated consumers in the same way.   This statement is, therefore, consumer oriented.

51.     The representation that the and-sanitizer "kills 99.99% of germs" is misleading in a material way to reasonable consumers acting reasonably under the circumstances.  Consumers of hand-sanitizers purchase hand-sanitizer for one reason only: to kill germs.  A claim that the hand sanitizer kills "99.99% of germs" is a material claim because it conveys information that is important to consumers, namely that the hand sanitizer is capable of killing nearly all germs, and hence, is likely to affect their choice of, or conduct regarding, the purchase of hand-sanitizer products.

52.     Due to Defendants' materially deceptive conduct, Plaintiff and the Class members paid a price premium for a product that they otherwise would not have paid had they known that the hand sanitizer does not kill 99.99% of germs.  Plaintiff and the Class members would not have purchased Defendants' hand sanitizers at the price that they were sold for, and instead would have purchased less expensive alternatives which did not contain such a statement, had they known that the statement was false.  The statement is, therefore, misleading to consumers in a material way.

53.     Plaintiff and the Class members reasonably relied on the representation to their detriment.  Plaintiff and the Class members believed that the hand-sanitizer would kill 99.99% of all germs.  Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class members purchased the product.  Because Defendants' materially deceptive representation lured Plaintiff and the Class members into purchasing or paying a price premium for the hand-sanitizer, Plaintiff and the Class members were injured when they were not protected from many types of germs, including many illness causing germs. Defendants failed to deliver a product that kills 99.99% of germs.  Defendants denied Plaintiff and the Class members the product that Plaintiff and the Class members reasonably believed they were purchasing.

54.     As a direct and proximate result of Defendants' violation of the New York General Business Law, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial, including actual damages (or $50 per class member, whichever is greater), treble damages, and punitive damages, as well as attorney's fees and costs.

55.     Plaintiff also brings this action to enjoin the unlawful acts and practices set forth herein.

## SECOND CAUSE OF ACTION

*(New York General Business Law § 350 – False Advertising)*

56.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 55, inclusive, of this Complaint as if set forth fully herein.

57.     Defendants represented to consumers, including Plaintiff and the Class members, that CVS-brand hand-sanitizers would kill 99.99% of germs.  Specifically, Defendants placed an advertisement, or cause to be placed an advertisement, on the front product label of its hand sanitizers, which stated, "kills 99.99% of germs."  Defendants also included an asterisk on the front label, which lead to a statement on the back label, in miniscule font, which read: "In as little as 15 seconds, kills more than 99.99% of many common germs that may cause illness."  This

statement plainly does not disclaim the promise made on the front label, but rather provides an ancillary promise that the product will kill 99.99% of a subset of germs that may cause illness within a specified time period. A reasonable consumer acting reasonably under the circumstances would not understand this statement to modify or take back the promise made on the front of the bottle, which was that the hand sanitizer would kill 99.99% of all germs.

58.     These statements, inclusive of any disclaimer, would lead a reasonable person acting reasonably under the circumstances to conclude that the hand-sanitizer had been proven through a scientific study to kill 99.99% of germs. That is because Defendant's "kills 99.99% of germs" statement included an exact figure for the percentage which went to the hundredth decimal point. Such an exact number would lead a reasonable person to conclude that a specific number had been calculated, and not that it had been picked out of clean air.

59.     The representation that the hand sanitizer "kills 99.99% of germs," inclusive of any disclaimer, is false. It has not been proven in any scientific study that the hand-sanitizer kills 99.99% of germs. In fact, it is scientifically proven that alcohol-based hand-sanitizer does not kill many types of germs.

60.     Defendants knew that the representation at issue was false when they made it, and/or made the representation recklessly and without regard for its truth. Defendants understood, or should have understood, that no scientific study proved that any specific percentage of all germs would be killed by the hand-sanitizer. Defendants understood the limitations of any studies they conducted, or caused to be conducted, purporting to substantiate the claim that the product kills 99.99% of germs. Defendants understood that their product was not and could not be tested against every microbial species on Earth, or every catalogued microbial species on Earth.

61.     Defendants also understood, or should have understood, that alcohol-based hand-sanitizer does not kill many types of germs. Defendants understood that reasonable consumers do not have a sophisticated understanding of microbiology and will not know to, or be able to, test the veracity of Defendants' claim that their product kills 99.99% of germs. Defendants are

the only party in possession of any scientific studies purporting to support the claim on their hand sanitizer label.  Defendants did not publicize their studies purporting to support the claim that the hand sanitizer kills 99.99% of germs.  Defendants did not list any limitations of their study on its hand sanitizer labels, even though they could have.  Defendants did not place a qualifier between the number "99.99%" and the phrase "of germs," even though they very easily could have placed the word "some" or the number of germs for which the product has been tested between the number "99.99%" and the phrase "of germs."

62.     Defendants intended that Plaintiff and the Class members rely on the representation.  The advertisement was placed on the product for the sole purpose of inducing customers to purchase the product.  Defendants understood that by promising to kill nearly every germ, their hand sanitizer would be purchased by consumers who trust Defendants and any promises of efficacy contained on Defendants' products, resulting in greater profits to Defendants than Defendants would otherwise generate from sales of hand sanitizer.  Defendants understood, or should have understood, that a reasonable consumer would read the "99.99%" promise to indicate that it was a scientific fact that this hand-sanitizer killed that number of germs.  Because this statement was placed on the front label nearly all CVS-brand hand sanitizers, it affects all similarly situated consumers in the same way.    This statement is, therefore, consumer oriented.

63.     The representation that the hand-sanitizer "kills 99.99% of germs" is misleading in a material way to reasonable consumers acting reasonably under the circumstances. Consumers of hand-sanitizers purchase hand-sanitizer for one reason only: to kill germs.  A claim that the hand sanitizer kills "99.99% of germs" is a material claim because it conveys information that is important to consumers, namely that the hand sanitizer is capable of killing nearly all germs, and hence, is likely to affect their choice of, or conduct regarding, the purchase of hand-sanitizer products.

64.     In addition to containing affirmative misrepresentations regarding the efficacy of the hand-sanitizer, Defendants' advertisement contains material omissions.  Specifically, but

without limitation:  Defendant failed to disclose to consumers that their hand sanitizers were only tested on a limited number of germs, were not tested on any viruses, and that their hand sanitizers have been proven to not kill certain common germs such as norovirus.

65.     Due to Defendants' materially deceptive conduct (including both affirmative misrepresentations and material omissions), Plaintiff and the Class members paid a price premium for a product that they otherwise would not have paid had they known that the hand sanitizer does not kill 99.99% of germs.  Plaintiff and the Class members would not have purchased Defendant's hand sanitizer at the price that they were sold for, and instead would have purchased less expensive alternatives that did not include a "kills 99.99% of germs" statement, had they known that that statement was false.  The statement is, therefore, misleading to consumers in a material way.

66.     Plaintiff and the Class members, as reasonably consumers acting reasonably under the circumstances, reasonably relied on the representation to their detriment.  Plaintiff and the Class members were misled by Defendants into believing that the hand-sanitizer would kill 99.99% of all germs.  Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class members purchased the product.  Because Defendants' materially deceptive representation lured Plaintiff and the Class members into purchasing or paying a price premium for the hand-sanitizer, Plaintiff and the Class members were injured when they were not protected from many types of germs, including many illness causing germs. Defendants failed to deliver a product that kills 99.99% of germs.  Defendants denied Plaintiff and the Class members the product that Plaintiff and the Class members reasonably believed they were purchasing.

67.     As a direct and proximate result of Defendants' violation of the New York General Business Law, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial, , including actual damages (or $500 per class member, whichever is greater), treble damages, and punitive damages, as well as attorney's fees and costs.

68.     Plaintiff also brings this action to enjoin the unlawful acts and practices set forth herein.

**THIRD CAUSE OF ACTION**

(*Fraud*)

69.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 68, inclusive, of this Complaint as if set forth fully herein.

70.     Defendants represented to consumers, including Plaintiff and the Class members, that CVS-brand hand-sanitizers would kill 99.99% of germs.  Specifically, Defendants placed an advertisement, or cause to be placed an advertisement, on its product label, which stated, "kills 99.99% of germs."  Defendants also included an asterisk on the front label, which lead to a statement on the back label, in miniscule font, which read: "In as little as 15 seconds, kills more than 99.99% of many common germs that may cause illness."  This statement plainly does not disclaim the promise made on the front label, but rather provides an ancillary promise that the product will kill 99.99% of a subset of germs that may cause illness within a specified time period.  A reasonable consumer acting reasonably under the circumstances would not understand this statement to modify or take back the promise made on the front of the bottle, which was that the hand sanitizer would kill 99.99% of all germs.

71.     These statements, inclusive of any disclaimer, would lead a reasonable consumer acting reasonably under the circumstances to conclude that the hand-sanitizer had been proven through a scientific study to kill 99.99% of germs. That is because the statement included an exact figure for the percentage which went to the hundredth decimal point.  Such an exact number would lead a reasonable person to conclude that a specific number had been calculated, and not that it had been picked out of clean air.

72.     The representation that the hand sanitizer "kills 99.99% of germs," inclusive of any disclaimer, is false.  It has not been proven in any scientific study that the hand-sanitizer kills 99.99% of germs.  In fact, it is scientifically proven that alcohol-based hand-sanitizer does not

kill many types of germs.

73.     Defendants knew that the representation at issue was false when they made it, and/or made the representation recklessly and without regard for its truth. Defendants understood, or should have understood, that no scientific study proved that any specific percentage of all germs would be killed by the hand-sanitizer. Defendants understood the limitations of any studies they conducted, or caused to be conducted, purporting to substantiate the claim that the product kills 99.99% of germs. Defendants understood that their product was not and could not be tested against every microbial species on Earth, or every catalogued microbial species on Earth.

74.     Defendants also understood, or should have understood, that alcohol-based hand-sanitizer does not kill many types of germs. Defendants understood that reasonable consumers do not have a sophisticated understanding of microbiology and will not know to, or be able to, test the veracity of Defendants' claim that their product kills 99.99% of germs. Defendants are the only party in possession of any scientific studies purporting to support the claim on their hand sanitizer label. Defendants did not publicize their studies purporting to support the claim that the hand sanitizer kills 99.99% of germs. Defendants did not list any limitations of their study on its hand sanitizer labels, even though they could have. Defendants did not place a qualifier between the number "99.99%" and the phrase "of germs," even though they very easily could have placed the word "some" or the number of germs for which the product has been tested between the number "99.99%" and the phrase "of germs."

75.     Defendants intended that Plaintiff and the Class members rely on the representation. The advertisement was placed on the product for the sole purpose of inducing customers to purchase the product. Defendants understood that by promising to kill nearly every germ, their hand sanitizer would be purchased by consumers who trust Defendants and any promises of efficacy contained on Defendants' products, resulting in greater profits to Defendants than Defendants would otherwise generate from sales of hand sanitizer. Defendants understood, or should have understood, that a reasonable consumer would read the "99.99%"

promise to indicate that it was a scientific fact that this hand-sanitizer killed that number of germs.

76.     The representation that the and-sanitizer "kills 99.99% of germs" is misleading in a material way to reasonable consumers acting reasonably under the circumstances.  Consumers of hand-sanitizers purchase hand-sanitizer for one reason only: to kill germs.  A claim that the hand sanitizer kills "99.99% of germs" is a material claim because it conveys information that is important to consumers, namely that the hand sanitizer is capable of killing nearly all germs, and hence, is likely to affect their choice of, or conduct regarding, the purchase of hand-sanitizer products.

77.     Due to Defendants' false representation, Plaintiff and the Class members paid a price premium for a product that they otherwise would not have paid had they known that the hand sanitizer does not kill 99.99% of germs.  Plaintiff and the Class members would not have purchased Defendant's hand sanitizer at the price that they were sold for, and instead would have purchased less expensive alternatives that did not include a "kills 99.99% of germs" statement, had they known that that statement was false.   The statement is, therefore, misleading to consumers in a material way.

78.     Plaintiff and the Class members reasonably relied on the representation to their detriment.  Plaintiff and the Class members believed that the hand-sanitizer would kill 99.99% of all germs.  Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class members purchased the product.   Because Defendants' false representation lured Plaintiff and the Class members into purchasing and paying a price premium for the hand-sanitizer, Plaintiff and the Class members were injured when they were not protected from many types of germs, including many illness causing germs. Defendants failed to deliver a product that kills 99.99% of germs.   Defendants denied Plaintiff and the Class members the product that Plaintiff and the Class members reasonably believed they were purchasing.

79.     Plaintiff and the Class members' reliance on Defendants' representation was a substantial factor in causing this harm.  Had Plaintiff and the Class members known that the hand-sanitizer has not been tested against the vast majority of germs in existence, or that hand-sanitizer has been proven to not kill many types of germs, Plaintiff and the Class members would either have not purchased the product or would only have been willing to pay substantially less for the product.

80.     As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial, including actual damages, punitive damages and costs.

## FOURTH CAUSE OF ACTION

*(Unjust Enrichment)*

81.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 80, inclusive, of this Complaint as if set forth fully herein.

82.     By false representing that their product kills 99.99% of germs, reasonable consumers acting reasonably under the circumstances purchased and/or paid substantially more for Defendants' hand sanitizers where they otherwise would not purchase the product, or would have been only willing to pay substantially less for the product.  Thus, Defendants were enriched when they sold more of their hand-sanitizer product at a higher price than they otherwise would have based on a false representation on their hand sanitizer labels.

83.     Defendants' enrichment came at the expense of Plaintiff and the Class members, who never received the product that they reasonably believed they were purchasing from Defendants and were not protected from 99.99% of germs.  Plaintiff and the Class members decided to purchase or overpay for a product based on the false belief that they would be protected from 99.99% of germs.  However, Defendants never delivered this product to Plaintiff or the Class members, and never offered to reimburse Plaintiff and the Class members for the product that they actually received as compared to the product they were promised.

84.     Defendants have successfully created a relationship of trust with consumers

through decades of successful marketing campaigns and their prevalence throughout New York state and the country more broadly. Plaintiff and the Class members trust and depend on Defendants to adequately describe the quality of their products, and have no reason to suspect Defendants of wrongdoing absent consumer-driven lawsuits exposing defendants for their wrongful conduct. Plaintiff and the Class members have no way of testing the veracity of Defendant's advertisement claims because they are not sophisticated microbiologists and do not have the resources or tools to verify the accuracy of Defendants' representations. Therefore, Defendants enjoy the benefit of having a close relationship with their customers who are generally powerless to Defendants' marketing tactics.

85.     As a result of the trust placed in Defendants by consumers, Plaintiff and the Class members reasonably relied, to their detriment, on the representation made by Defendants regarding the efficacy of their hand sanitizer. Plaintiff and the Class members believed that the hand-sanitizer would kill 99.99% of all germs. Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class members trusted Defendants and purchased the product. Because Defendants' false representation lured Plaintiff and the Class members into purchasing and/or paying a price premium for the hand-sanitizer, Plaintiff and the Class members were injured when they were not protected from many types of germs, including many illness causing germs. Defendants failed to deliver a product that kills 99.99% of germs. Defendants denied Plaintiff and the Class members the product that Plaintiff and the Class members reasonably believed they were purchasing.

86.     Plaintiff and the Class members' reliance on Defendants' representation was a substantial factor in causing this harm. Had Plaintiff and the Class members known that the hand-sanitizer has not been tested against the vast majority of germs in existence, or that hand-sanitizer has been proven to not kill many types of germs, Plaintiff and the Class members would either have not purchased the product, or would only have been willing to pay substantially less for the product.

87.     Allowing Defendants to reap the reward of exploiting average consumers who are

ignorant of microbiology, especially during the COVID-19 pandemic when hand-sanitizers were treated as a miracle cure-all product, would be against equity and good conscience.  Defendants should not be allowed to benefit at the expense of consumers who trust Defendants out of desperation to protect them from serious illness, and even death.

88.     As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for relief as follows:

1) Actual damages;

2) Statutory damages;

3) Treble damages;

4) Punitive damages;

5) Restitution;

6) Affirmative injunctive relief mandating that Defendants remove the false advertisements from their product and product packaging

7) Costs of suit and litigation expenses;

8) Attorney's fees; and

9) Such other and further relief as this Court may deem just and proper.

*[continued on next page]*

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself, and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: May 18, 2022.

Respectfully Submitted,

/s/Thiago M. Coelho
Thiago M. Coelho
Robert Dart
Jonas Mann
Carolin Shining
(*pro hac vice* applications forthcoming).
Wilshire Law Firm, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA  90010
T: (213) 381-9988
F: (213) 381-9989
E:  thiago@wilshirelawfirm.com
     rdart@wilshirelawfirm.com

/s/Daniel A. Schlanger
Daniel A. Schlanger
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net

*Attorneys for Plaintiff and the Putative Class*